## Case No. 18,200.

### ZANE et al. v. PECK et al.

[3 Ban. & A. 36; [1] 12 O. G. 518.]

Circuit Court, D. Connecticut. Aug. 11, 1877.

PATENTS FOR SELF-CLOSING FAUCET—ANTICIPATION.

1. The patent for a self-closing faucet, granted to Nathaniel Jenkins, June 27th, 1865, was not anticipated by the French patent of Chretien Morand, dated November 14th, 1851.

2. Where an anticipating device has been changed, so that by the change the thing which is produced is practically a new structure, the new device, though subsidiary to the former one, is patentable.

In equity.

Thomas William Clarke, for complainants.
Benjamin F. Thurston, for defendants.

SHIPMAN, District Judge. This is a bill in equity [by Joseph Zane and others] to restrain the defendants [Peck Bros. & Co.] from the infringement of letters patent for a self-closing faucet, which were issued to Nathaniel Jenkins on June 27th, 1865, and which have been duly assigned to the plaintiffs. The defendants admit infringement.

---

[1] [Reported by Hubert A. Banning. Esq., and Henry Arden, Esq., and here reprinted by permission.]

and the sole question is as to the novelty of the alleged invention. The validity of the patent has been sustained by decree of the circuit court for the District of Massachusetts, in a case where other anticipatory devices than those which are here relied upon were set up in defence. The present defendants are the licensees of the defendants in the Massachusetts case.

The invention consisted in opening a self-closing faucet by means of a quick-threaded screw-follower, the threads of which are inclined at so great a pitch that, when the power to turn the screw is removed, the pressure of the water and of a spiral spring under the valve forces the valve to its seat, where it is held by the pressure of the water. The specification says that another part of the invention consists in combining with the valve and screw-follower a swivel, so that the rotary movement of the spindle shall not be imparted to the valve, which shall have only an axial movement, and thus twisting or friction of the valve shall be prevented. This swivel connection of spindle and valve is frequently used in structures where rotation of the valve is not desired. The faucet has gone into extensive use.

The claims of the patent are: "1. The screw-follower H, in combination with the valve of a self-closing faucet, substantially as set forth, and for the purpose described. 2. The combination of the swivel P, screw-follower H, valve K, and spring O, substantially as and for the purpose described." Self-closing faucets opening by means of a lever, and also by means of a quick-threaded screw, have long been known. The invention in this case is the combination of quick-threaded screw, valve and spring, substantially as described in the specification.

In the pre-existing English patent of Moses Poole, dated April 15th, 1845, and in the specification of William Thomas Cheetham, left with the English commissioner of patents, March 14th, 1860, and in the English patent of Thomas Melling, dated October 6th, 1857, no spring was used, and by reason of that omission these devices did not anticipate the Jenkins invention.

The French patent of Chretien Morand, dated November 14th, 1851, is chiefly relied upon by the defendants as anticipatory of the plaintiffs' patent. The Morand device was designed in part to prevent what is called the "water-hammer," or the unpleasant sound which is caused by the reaction of the water when the valve is suddenly closed. The faucet is of two parts, of unequal size; the induction-way is of larger size than the eduction-way. There are two valves, also of unequal size. The outer valve is in rigid connection with and is turned by a quick-threaded screw-spindle. This valve is so connected with the inner one that the inner valve is guided longitudinally, and is forced to its seat by the same rotation of the screw-follower which operates upon the outer valve. The connection of the inner valve with the spindle is not by means of a swivel-joint. Below the inner valve is a spring, which, with the pressure of the water, causes the valves to be closed when the power that turns the screw is removed. The patentee remarks that while he prefers two valves, "it will be understood that in certain cases he can employ but one." The manner in which the faucet will then be constructed is not described. By the use of two valves, the body of water which is between the valves forms a cushion, which checks the force of the sound or of the blow of the water-hammer when the faucet is suddenly closed.

The principal elements which are employed to produce a self-closing faucet—to wit, the screw-follower with a quick-threaded screw, valve and spring—are found in both the Morand and the Jenkins patents; but the double valves of Morand, and the general method in which the mechanism of the inner valve and the spring was arranged, with reference to each other and the water-way, caused his faucet to be cumbersome and lacking in simplicity and economy. It was a contrivance of many parts, and lacked general utility. Jenkins omitted one of the valves, and of course discarded the connection between the two, and made the passage-ways for the entrance and discharge of the water of the same size, and connected the valve and the screw-follower by a swivel, and, generally, materially simplified the construction and arrangement of the valve and spring mechanism. He thus made a simple and economical self-closing faucet, which has gone into general use. He has produced the old result of Morand in a more economical and beneficial manner. The invention of Jenkins is subsidiary to that of Morand; but he has essentially changed the Morand device in such manner that, by the change, the thing which is produced is practically a new structure, and his improved device is, therefore, patentable.

This change was not merely formal, but was, to a certain degree, a structural change and modification of the parts of the Morand faucet, which change required inventive and not merely mechanical skill, and required a sufficient exercise of the inventive faculty to justify the grant of an exclusive right to the use and sale of the article which was produced. It was not simply the "carrying forward or new or more extended application of the original thought," and was not "a change only in form, properties, or degree." Smith v. Nichols, 21 Wall. [88 U. S.] 112. Let there be a decree for an injunction and an account.

[See Zane v. Peck Bros., 9 Fed. 101, and 13 Fed. 475.]